# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUN LIFE ASSURANCE COMPANY CANADA, | : |
| Plaintiff, | : |
| v. | : C.A. No. 17-75-LPS |
| U.S. BANK NATIONAL ASSOCIATION, as Securities Intermediary, | : |
| Defendant. | : |

Thomas J. Francella, Gregory F. Fischer, COZEN O'CONNOR, Wilmington, DE

Michael J. Miller, Charles J. Vinicombe, Barry Golob, Daniel P. Thiel, Lezlie Madden, Kristin Parker, COZEN O'CONNOR, Philadelphia, PA

    Attorneys for Sun Life Assurance Company Canada

David J. Baldwin, POTTER ANDERSON & CORROON LLP, Wilmington, DE

John E. Failla, Nathan Lander, Elise A. Yablonski, PROSKAUER ROSE LLP, New York, NY

    Attorneys for U.S. Bank National Association

## **MEMORANDUM OPINION**

May 17, 2019
Wilmington, Delaware



**STARK, U.S. District Judge:**

Pending before the Court is Sun Life Assurance Company Canada's ("Sun Life") renewed motion for summary judgment on U.S. Bank National Association's ("U.S. Bank") counterclaims.[1] (D.I. 201) The Court heard argument on April 30, 2019. ("Tr.") Trial on the counterclaims is scheduled to begin next week, on May 20. For the reasons set forth below, the Court will deny Sun Life's motion.

## I. LEGAL STANDARDS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with

---

[1] Also pending is the issue of whether – and, if so, how much – of the premium payments should be returned, which is the subject of recent briefing. (*See* D.I. 200, 203) As the parties (initially) jointly agreed to (*see* Tr. at 81, 87), the Court will defer ruling on the premiums issue until after the forthcoming trial, notwithstanding Sun Life's recent request to the contrary during the pretrial conference. While the parties had also moved to exclude certain expert testimony, the parties have now withdrawn those motions. (*See* D.I. 248)

1

specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## II. DISCUSSION

U.S. Bank agrees that it cannot prevail on its counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing as long as the Court's prior

determination that the life insurance policy at issue in this litigation (the "Policy") stands, which it does for purposes of the remaining proceedings in this Court.[2] Summary judgment will be granted to Sun Life on these counterclaims. *See generally Encite LLC v. Soni*, 2008 WL 2973015, at *12 (Del. Ch. Aug. 1, 2008) (unpublished) ("The implied covenant of good faith and fair dealing 'attaches to every contract.' That no such covenant can exist in the absence of a contract is the obvious, and logical, corollary to this fundamental proposition.") (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)).

Remaining at issue are U.S. Bank's counterclaims asserting Sun Life engaged in an unfair or deceptive business practice, in violation of Massachusetts General Laws Chapter 93A ("93A claim"), and asserting promissory estoppel. The Court will deny Sun Life's motion for summary judgment with respect to each of these claims.

### A. 93A Claim

Under Massachusetts law, a party "who engages in the conduct of any trade or commerce" is liable under Chapter 93A for any "***unfair*** or ***deceptive*** act." *See* MASS. GEN. LAWS ch. 93A, §§ 2(a), 11 (emphasis added).

Whether an act is "***unfair***" must be determined based on "the circumstances of each case." *Kattar v. Demoulas*, 739 N.E.2d 246, 257 (Mass. 2000). Massachusetts courts apply a three-step framework, inquiring: "(1) whether the practice is at least within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to

---

[2] In connection with an earlier summary judgment opinion (D.I. 191), the Court held that the Policy was void *ab initio* as an illegal wagering contract. The Court reiterated this holding in denying U.S. Bank's motion for reconsideration. (D.I. 242) Further background on the parties' disputes can be found in these earlier opinions.

3

consumers." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005). "[I]t is neither necessary nor sufficient that a particular act or practice violate common or statutory law." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009); *see also Mass. Farm Bureau Fed'n, Inc. v. Blue Cross of Mass., Inc.*, 532 N.E.2d 660, 664 (Mass. 1989) (stating violation of Chapter 93A "need not be premised on a violation of an independent common law or statutory duty"). Rather, courts leave "the determination of what constitutes an unfair business practice to the finder of fact, subject to the court's performance of a legal gate-keeping function." *Mass. Eye*, 552 F.3d at 69.

Conduct is "***deceptive***" "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Gabriel v. Jackson Nat'l Life Ins. Co.*, 2015 WL 1410406, at *16 (D. Mass. Mar. 26, 2015) (internal citations omitted). "[P]roof of actual reliance . . . on a representation is not required," however. *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975); *see also Lincoln Ventures, Inc. v. FSL Associates, Inc.*, 2006 WL 1745804, at *4 (Mass. Super. Apr. 25, 2006) ("[P]laintiffs may prevail on a c. 93A action founded on a misrepresentation without satisfying the common-law requirements of reasonable reliance . . . .").

Reviewing the record in the light most favorable to U.S. Bank as the nonmoving party, the Court concludes that a reasonable factfinder could find that Sun Life engaged in an unfair and/or deceptive act in connection with its handling of the Policy. These conclusions arise from the Court's determination that, based on all the circumstances of the case, a reasonable jury could find that Sun Life unfairly, unethically, and unscrupulously misrepresented the state of the

Policy to induce U.S. Bank (and/or FCI[3]) to continue making hundreds of thousands of dollars in premium payments, when, in fact (as a reasonable jury could find) Sun Life had already determined that it would not honor the Policy. For the same reasons, a reasonable jury could find that Sun Life acted deceptively in making the statements it made, and thereby caused U.S. Bank to act differently than it otherwise would have. Even accepting, *arguendo*, that Sun Life had no affirmative obligation to disclose to U.S. Bank its internal beliefs or intent,[4] Sun Life's internal beliefs and intent may still be relevant to the factual question of whether Sun Life made willful misrepresentations that constitute an unfair and/or deceptive act.

Among the evidence supporting and rendering reasonable the above conclusions is the following:

- On July 10, 2008, in response to a "Verification of Coverage" inquiry submitted by Joshua Spalding at Spalding Financial, Sun Life answered the question "[i]s this policy currently in force" by checking "Yes." (D.I. 155-1 Ex. 20 at SOL24)

- On July 30, 2008, as part of a "Notice of Intent to Viaticate[5] Life Insurance Policy," Life Settlement Solutions, Inc. ("LSS"), which was considering purchasing the Policy, requested that Sun Life "complete the [Verification of Coverage] and return it to [LSS], together with an indication as to ***whether the Insurer intends to pursue any investigation regarding the validity of the insurance contract*** or the application." (D.I. 155-1 Ex. 21 at SunLife304) (emphasis added) LSS then bought the Policy in August 2008. (D.I. 155 at ¶ 22)

- By 2009, Sun Life had identified the Policy as a potential stranger-originated life insurance ("STOLI") policy. (D.I. 155-1 Ex. 13 at 78-80, 83) (Donald Lawrence, Sun Life's Vice President of Valuation, testifying that Sun Life used certain markers to

---

[3] FCI is the beneficial owner of the Policy, but is not a party to the present litigation; U.S. Bank serves only as a securities intermediary. (D.I. 197 at 3)

[4] While it seems that Sun Life was not in any fiduciary relationship with U.S. Bank, and likely owed no affirmative obligation of disclosure to U.S. Bank, the Court need not decide this issue at this time. A conclusion that Sun Life did have such an obligation would only provide additional grounds for the Court's decision to deny Sun Life's summary judgment motion.

[5] Merriam-Webster defines "viaticate" as "to sell or assign (a life insurance policy) in a viatical settlement."

5

identify which policies "had the higher probability of being STOLI policies," and that the Policy was flagged based on these markers)

- In May 2009, Sun Life sent a letter to U.S. Bank verifying the change in ownership on the Policy, but also warning that "Sun Life Assurance Company of Canada wishes to advise that it reserves all rights to challenge any policy that it concludes is invalid." (D.I. 155-1 Ex. 25)

- In August 2009, a Sun Life employee (Barry Posterro) sent an internal e-mail with a spreadsheet attachment identifying the Policy as "likely S[T]OLI." (D.I. 155-1 Ex. 26 at SunLife7878)

- By October 2009, another Sun Life employee (Richard Boutilier) sent another internal e-mail with a spreadsheet attachment identifying the Policy as "likely STOLI," "so that we might make the case to terminate some of these producers &/or firms." (D.I. 155-2 Ex. 28) The spreadsheet attachment states that "review confirms heavy STOLI presence. Would safely conclude that all cases placed with [Spalding, including the Policy] have been moved to the settlement market. Fairly clear STOLI plays." (*Id.* at SunLife10274)

- In November 2013, in response to a "Policy Information Request" from U.S. Bank, Sun Life answered the question "[i]s the policy currently in Good Standing" by checking "Yes." (D.I. 155-1 Ex. 4; Ex. 6 at 56-58)

- In a September 2016 internal Sun Life memo with a spreadsheet attachment, the Policy was listed as "likely [STOLI]." (D.I. 155-2 Ex. 35)

- After the November 2016 death of the insured, Sol, Sun Life initiated a death claim investigation rather than pay out U.S. Bank's claim under the Policy. (D.I. 132 at 16; D.I. 132-10 at 138-41)

- Additionally, between 2006 and 2016, Sun Life had numerous communications with individuals and/or entities (including U.S. Bank), responding to requests for other information, such as Policy value inquiries or annual reports sent to the Policy owner each year. (*See, e.g.*, D.I. 155-1 Exs. 4-5, 7-8)

In the Court's view, it would not be unreasonable for the jury, taking this evidence (along with all of the other evidence in the record, which is not summarized here) in the light most favorable to U.S. Bank, to find that Sun Life had decided the Policy was STOLI and thereby void, and had further decided it would not honor the Policy, yet continued to make representations that the Policy was in "good standing." Essentially, the parties dispute whether it would be reasonable for a jury confronted with this evidence, and taking it all in the light most

6

favorable to U.S. Bank, to find that Sun Life willfully misrepresented the state of the Policy in an effort to induce U.S. Bank to continue paying premiums. While reasonable minds could well differ as to the reasonableness of such an inference, this Court concludes that it would be reasonable for a jury to reach such a finding.

By no means is this the only finding a reasonable jury could reach. There is, for instance, no evidence before the Court that Sun Life ever represented to U.S. Bank (or any other interested party) that it would not investigate or challenge the Policy's validity (and Sun Life had at least once expressly stated the opposite). (Tr. at 66; D.I. 155-1 Ex. 25) Nor is there any evidence that U.S. Bank ever expressly asked Sun Life to confirm that Sun Life believed the Policy was enforceable and did not plan to challenge it. The jury may reasonably find that the representations that the Policy was in "good standing" were entirely true at the time they were made.[6] But these points all implicate genuine disputes of material fact that will have to be presented to a jury. The jury will be tasked with drawing whatever reasonable inferences it is persuaded to draw from the evidence.

Sun Life argues that the theory articulated by U.S. Bank in its summary judgment briefing is not the counterclaim U.S. Bank actually pled in its Answer and Counterclaim ("Answer"). (D.I. 202 at 6-9; D.I. 222 at 1-2) Generally, a party cannot amend the pleadings

---

[6] *See U.S. Bank Nat'l Assoc. v. PHL Variable Ins. Co.*, 2013 WL 2936099, at *9 (D. Minn. June 13, 2013) ("[T]he representations made by PHL relate to the status of the Policy at the time, not to PHL's beliefs or intentions . . . . At the time of PHL's representations, the Policy was technically 'in force,' 'issued,' and had 'value' just as PHL represented" and, consequently, U.S. Bank's "fraud claim . . . based on affirmative misrepresentations . . . fails."); *cf. Lima LS PLC v. PHL Variable Ins. Co.*, 2013 WL 3327038, at *8 (D. Conn. July 1, 2013) (citing approvingly but distinguishing *U.S. Bank*, 2013 WL 2936099, because "Sun Life has alleged that defendants made numerous representations . . . ***that the Policies would not be contested*** . . . Taking these allegations as true, the Court finds that defendants did have a duty to disclose a known intention to contest or not to honor the Policies.") (emphasis added).

7

through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion. *See Bartos v. Pennsylvania, Dept. of Envtl. Protec.*, 2011 WL 2456613, at *19 (M.D. Pa. May 25, 2011) (citing *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988)). In Sun Life's view, U.S. Bank's 93A counterclaim as pled is limited to Sun Life's allegedly unreasonable refusal to pay out the Policy proceeds once a claim was made following the death of the insured. (*See, e.g.*, D.I. 202 at 6-9; D.I. 222 at 1-2)[7] While this theory is plainly pled in the Answer, the Court does not read U.S. Bank's 93A claim as narrowly as Sun Life. Instead, the Court agrees with U.S. Bank that it also adequately pled a 93A claim based on allegations that Sun Life repeatedly represented that the Policy was in "good standing" and presumptively valid, despite Sun Life having internally concluded that the Policy was an illegal STOLI policy on which Sun Life would never pay a claim. (D.I. 214 at 5-10)

In the Answer, as part of the "Nature of the Action," U.S. Bank alleges that Sun Life's "unfair business practice . . . is to continue to collect premiums on policies it believes are invalid, while misleading the owners of its policies, and then deny claims under such policies." (D.I. 4 at ¶ 102) Defendant later specifically sets forth a counterclaim alleging that Sun Life's "unreasonable and bad faith refusal to pay the Policy's death benefits to [U.S. Bank] is an unfair or deceptive practice" because, "*[a]mong other things*, [U.S. Bank] . . . misrepresented pertinent facts relating to the coverage at issue [and] lied to [U.S. Bank] regarding . . . the status of the claim." (*Id.* at ¶ 191) (emphasis added) In a paragraph tying the cause of action to the state of Massachusetts, U.S. Bank further alleges that Sun Life "made representations that the Policy was 'in force' and in good standing" (*id.* at ¶ 192), and then concludes that Sun Life "knew that it had

---

[7] According to Sun Life, it follows that since the Court has held that the Policy was void *ab initio*, Sun Life's refusal to pay the claim was fully justified, and as a matter of law there cannot have been anything unfair or deceptive in Sun Life's denial of the claim.

8

no legitimate basis for refusing the pay [U.S. Bank's] claim and ***willfully misrepresented that it would honor the Policy***." (*Id.* at ¶ 194) (emphasis added)

U.S. Bank adequately pled an unfair and deceptive business practice claim based on a knowing or willful misrepresentation theory. U.S. Bank alleged in the Answer, among other things, that Sun Life knew it would not honor the Policy, yet continued to willfully represent that it would, in order to induce the payment (and collection by Sun Life) of premiums. (*Id.* at ¶¶ 191-94) While U.S. Bank cannot prevail on its theory (which is plainly also pled) that Sun Life was unreasonable, unfair, and deceptive in denying the claim on the Policy – because the Policy has been declared void *ab initio* – U.S. Bank's unfair and deceptive business practice allegations do not rise and fall with the lawfulness of the Policy. *See generally St. Paul Surplus Lines Ins. Co. v. Feingold & Feingold Ins. Agency, Inc.*, 693 N.E.2d 669, 672 (Mass. 1998) (treating material misrepresentations on insurance application as independent basis for Ch. 93A liability).

Certainly, U.S. Bank could have made it clearer from the outset that it was pressing a 93A claim even in the event the Court were to find the Policy void *ab initio*, but there is no unfair prejudice – and no lack of notice – to Sun Life from U.S. Bank's failure to do so. The overwhelming focus of this lawsuit until recently has been devoted to the issue of whether the Policy is an unlawful stranger-originated life insurance policy, i.e., STOLI, and it is unsurprising there was not perfect clarity previously as to the parties' alternative positions in the event they should lose on this headline issue. But U.S. Bank did enough to put Sun Life on notice of its 93A claim and the Court is not persuaded it should dismiss it.

Accordingly, for the reasons given above, Sun Life's motion for summary judgment on U.S. Bank's 93A claim will be denied.

9

### B. Promissory Estoppel

To prevail on its promissory estoppel claim, U.S. Bank will have to show, by clear and convincing evidence, that "(i) a promise was made [by Sun Life]; (ii) it was the reasonable expectation of the promisor [Sun Life] to induce action or forbearance on the part of the promisee [U.S. Bank]; (iii) the promisee [U.S. Bank] reasonably relied on the promise and took action to [its] detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000); *see also PHL Variable Ins. Co. v. ESF QIF Tr. by and through Deutsche Bank Tr. Co.*, 2013 WL 6869803, at *8 (D. Del. Dec. 30, 2013) ("*ESF QIF*"). The Court agrees with U.S. Bank that it may press its promissory estoppel claim notwithstanding the Court's finding that the Policy was void *ab initio* and further agrees that a reasonable factfinder, taking the evidence in the light most favorable to U.S. Bank, could find each of the elements of promissory estoppel established by clear and convincing evidence.

As an initial matter, the Court concludes that Sun Life's alleged promises – that it would pay a claim on the Policy, as long as premiums continued to be paid and the Policy remained in good standing – could constitute unjust, bad faith promises to which it should be held even though such promises were made in connection with a Policy that has now been determined to have been void *ab initio*. *See EFS QIF*, 2013 WL 6869803, at *6 (denying motion to dismiss promissory estoppel counterclaims over alleged STOLI policy owned by neutral third party); 17A Am.Jur.2d *Contracts* § 309 ("It seems to be well established that a party to an illegal agreement may, under some circumstances, be estopped to assert its illegality as against an innocent third person who has become interested in the agreement or whose rights are affected

10

by the agreement . . . ."); *see also* D.I. 28; D.I. 29 at 66 (denying Sun Life's motion to dismiss U.S. Bank's promissory estoppel counterclaim).[8]

Further, a reasonable factfinder could find each of the elements of promissory estoppel by clear and convincing evidence. Such a factfinder could find that Sun Life promised that it would pay a claim on the Policy (following the insured's death) or, at minimum, that Sun Life promised it viewed the Policy as one that was in "good standing" and, therefore, not one about which Sun Life had any particular suspicions or concerns. While the jury may very well be unpersuaded by U.S. Bank's characterization of Sun Life's statements as "promises to U.S. Bank as a subsequent purchaser of the Policy that the Policy was in good standing and that Sun Life would thus pay U.S. Bank $10 million when Ms. Sol died" (D.I. 214 at 10), in the Court's view it would not be unreasonable for the jury to make such a finding.[9] The jury may conclude that Sun Life had no purpose for making its statements other than to mislead U.S. Bank into believing that, in the view of Sun Life, all was fine with the Policy and that it would be treated just like any other Policy on which the premiums were paid up at the time of the death of the insured.

A reasonable factfinder could also find that Sun Life made these promises reasonably expecting them to induce U.S. Bank to continue to pay premiums to keep the Policy in "good

---

[8] *But see Wilmington Sav. Fund Soc'y., FSB v. PHL Variable Ins. Co.*, 2014 WL 1389974, at *12 (D. Del. Apr. 9, 2014) ("[A] contract that is void *ab initio* may not be enforced equitably through estoppel.") ("*WSFS*"). *WSFS*, unlike the instant case, involved a claimant on the Policy who was *in pari delicto*, whereas here there is no evidence that U.S. Bank was involved in any of the fraud or misrepresentations relating to the Policy. Moreover, in this Court's view, the Court is *not* enforcing a void Policy but is, instead, estopping an allegedly bad faith actor who made promises in connection with that Policy from escaping the just consequences of such promises. What the proper remedy for U.S. Bank should be will have to await a determination by the Court after trial, if U.S. Bank manages to prove its promissory estoppel claim at trial.

[9] That is, the jury could reasonably conclude that "good standing" is a sufficiently broad term as to imply that, provided the premiums continued to be paid and all conditions precedent to a valid claim were eventually met (e.g., the insured passed away), a claim on the Policy would be paid.

11

standing," and that U.S. Bank reasonably relied on these promises in deciding to pay more than $1 million in premiums[10] to Sun Life. Finally, a reasonable factfinder could find that the only way to avoid injustice is to enforce Sun Life's promise. While it may be that injustice may also be avoided by repayment of the premiums to U.S. Bank, Sun Life is vigorously opposing this relief as well. Moreover, a reasonable jury might find that returning approximately $2 million in premiums does not avoid the injustice of not receiving the full $10 million of Policy proceeds.

As Sun Life points out, under Delaware law, U.S. Bank will also have to show that it "lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; relied on the conduct of the party against whom estoppel is claimed; and suffered a prejudicial change of position as a result of his reliance." *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990). The jury here could reasonably find all of this as well. A reasonable factfinder could (but need not) find that even had U.S. Bank directly asked if Sun Life had determined the Policy was STOLI or planned to challenge it that Sun Life would not have disclosed its internal beliefs and intentions. Thus, a reasonable factfinder taking the evidence in the light most favorable to U.S. Bank could find that U.S. Bank lacked the means of obtaining knowledge of the truth of Sun Life's plans with respect to the Policy.[11] Moreover, as already explained, a reasonable factfinder could also find that U.S. Bank relied on Sun Life's conduct and promises and suffered a

---

[10] By the Court's calculation, premium payments have totaled $1,923,068.00, $1,497,068 of which has been paid by or through U.S. Bank as securities intermediary (D.I. 155-1 Ex. 9) and $720,368 of which has been paid since FCI purchased the Policy from LIMA Holdings LLC in January 2014 (D.I. 155 at ¶ 4) (assuming FCI made the $18,200 payment on January 6, 2014). (D.I. 155-1 Ex. 9)

[11] U.S. Bank's Sullivan explains that insurance carriers, like Sun Life, have "direct access to the insured and are entitled to require, before issuing a policy, confirmation of the insured's financial condition, including financial statements, tax returns and third-party reports," whereas purchasers of policies in the secondary market, like FCI, "could only review publicly-available information." (D.I. 216 at ¶ 22)

12

prejudicial change of position by being induced to pay more than $1 million in premiums that it otherwise never would have paid.

Accordingly, the Court will deny Sun Life's motion for summary judgment on U.S. Bank's promissory estoppel claim.

## III. CONCLUSION

Except to the extent not disputed (that is, with respect to U.S. Bank's breach of contract and implied covenant of good faith and fair dealing claims), Sun Life's motion for summary judgment will be denied. Trial on U.S. Bank's 93A claim and promissory estoppel claim will begin next Monday, as scheduled. An appropriate order follows.