# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA, <br><br> Plaintiff, <br><br> v. <br><br> U.S. BANK NATIONAL ASSOCIATION, as Securities Intermediary, LINDSAY SPALDING-JAGOLINZER <br><br> Defendants. <br><br> U.S. BANK NATIONAL ASSOCIATION, as Securities Intermediary, <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> SUN LIFE ASSURANCE COMPANY OF CANADA <br><br> Counterclaim-Defendant. | C.A. No. 17-75-LPS |

## MEMORANDUM ORDER

At Wilmington this **30th** day of **December, 2019**:

Having reviewed the parties' briefing (D.I. 281-82, 291-94) and related materials, and having conducted a six-day jury trial that resulted in a verdict in favor of U.S. Bank National Association ("U.S. Bank") on its promissory estoppel counterclaim (*see* D.I. 283-90), **IT IS HEREBY ORDERED** that:

1. U.S. Bank's request for oral argument (D.I. 295) is **DENIED**. The Court has heard at great length from the parties, including during pretrial motions hearings and at trial, on the issues now briefed.

2. Sun Life Assurance Company of Canada's ("Sun Life") renewed motion for judgment as a matter of law or, in the alternative, for a new trial (D.I. 280) is **DENIED**.[1]

Sun Life presents three bases on which it contends the Court should grant judgment as a matter of law or, in the alternative, a new trial: (1) U.S. Bank provided no evidence that it (as opposed to Financial Credit Investment II, Ltd. ("FCI")) relied on any promise made by Sun Life; (2) no reasonable juror could have found that (i) Sun Life made a promise or (ii) FCI reasonably relied on a Sun Life promise; and (3) the verdict form did not include the elements of promissory estoppel, which led to jury confusion. (D.I. 281 at 1-2) The Court is unpersuaded by Sun Life's contentions.

First, U.S. Bank did not need to prove reliance by any entity other than FCI. *See* Restatement (Second) of Contracts § 90 (describing element of "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee ***or a third person***") (emphasis added); *see also Harmon v. Delaware*, 2010 WL 8250827, at *2 n.6 (Del. Super. Ct. Dec. 21, 2010) ("The Second Restatement of Contracts provides the seminal formulation of promissory estoppel."); *see generally Chrysler Corp. v. Quimby*, 144 A.2d 123,

---

[1] The Court adopts and hereby incorporates by reference the discussion of legal standards governing motions for judgment as a matter of law and new trial set out in *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1348-52 (3d Cir. 1991), and *Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 340-41 (D. Del. 2018) (applying Third Circuit law), *aff'd* 2019 WL 6834390 (Fed. Cir. Dec. 16, 2019), as well as the detailed factual background of this case set out in *Sun Life Assurance Co. Canada v. U.S. Bank Nat'l Ass'n*, 369 F. Supp. 3d 601, 605-07 (D. Del. 2019).

2

128-29 (Del. 1958) (citing Second Restatement). Sun Life knew since at least 2009 that U.S. Bank was serving as intermediary for a third-party owner of the Sol Policy, and (relatedly) that U.S. Bank in its individual capacity was not involved in any relationship with Sun Life. (D.I. 1; Wilkosky Tr. at 555-57)[2] As the jury (not unreasonably) found, it was neither unreasonable nor unforeseeable that the actual policyowner (i.e., FCI) would rely on any statements Sun Life made to FCI's intermediary, U.S. Bank, regarding the Sol Policy.

Second, the Court continues to reject Sun Life's contentions that no reasonable juror could find (by clear and convincing evidence) that Sun Life made a promise or that FCI reasonably relied on that promise. (D.I. 251 at 11-13) Sun Life, in effect, asks the Court to reweigh the evidence (D.I. 281 at 6-9), which the Court is not permitted (on Sun Life's motion) to do.

Sun Life's repeated reference to U.S. Bank's insurance expert, William Hager, who testified (among other things) that Sun Life's statements regarding the Sol Policy being "in good standing" were accurate and that Sun Life's statements "did not establish any absolute promise to pay the death benefit upon the insured's death" (*id.* at 7-8), do not alter the Court's conclusion as to the reasonableness of the jury's verdict. The jury heard this testimony, and much more (*see, e.g.*, D.I. 292 at 15-17 (citing additional Hager testimony and other evidence)), and was free to give it whatever weight it thought it merited. It is simply incorrect to insist, as Sun Life does, that a reasonable jury could only have found that Hager's testimony "completely debunked" U.S. Bank's contention. (D.I. 293 at 5)

---

[2] Citations to the trial transcript (which can be found at D.I. 283-89) are in the form of ("[Witness last name] Tr. at [page]").

3

For purposes of promissory estoppel, a promise need only be "***reasonably*** certain and definite." *Boulden v. Albiorix, Inc.*, 2013 WL 396254, at *13 (Del. Ch. Jan. 31, 2013) (emphasis added), *as revised* (Feb. 7, 2013); *see also James Cable, LLC v. Millennium Dig. Media Sys., L.L.C.*, 2009 WL 1638634, at *5 (Del. Ch. June 11, 2009) (same); *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1233 n.27 (Del. Ch. 2000) (citing authority for proposition that promise need be "reasonably definite and certain so that the intentions of the parties can be ascertained"). The jury had ample evidence from which it could have reasonably found that Sun Life's promise to pay, if premiums continued to be paid, to have been reasonably certain and definite. Sun Life points to no binding nor even persuasive authority that allows a promisor to evade the consequences of a promisee's reasonable reliance based on the simple expedient of a perfunctory reservation of unidentified (e.g., the May 12 letter) and unasserted (e.g., fraud in incontestable policies) rights or conditions. (*See* D.I. 155-1 Ex. 25; Hager Tr. at 697; *see also Chaplake Holdings, Ltd. v. Chrysler Corp.*, 1999 WL 167834, at *31 (Del. Super. Jan. 13, 1999) (finding that promise purportedly conditioned on "one party's business, the general economic conditions and 'other conditions'" did not preclude finding of estoppel when promise was clear, definite, and intended to induce action))

Third, Sun Life's argument for a new trial based on purported juror confusion, because "the Jury Verdict form did not include the required elements of proof" (D.I. 281 at 10), is unavailing. Sun Life concedes that "the Court's jury instructions included the elements of promissory estoppel," and Sun Life takes no issue with those instructions. (*Id.*; *see also* D.I. 267 at 24 (instructing on elements of promissory estoppel)) The jury is presumed to have understood and followed the Court's instructions. *See Graboff v. Colleran Firm*, 744 F.3d 128, 135 n.5 (3d Cir. 2014) ("We presume that the jury followed the District Court's instructions when arriving at

its verdict"). Further, Sun Life cites no authority for its suggestion that jury instructions must always (or at least here) require specific findings on each element of a claim. Indeed, the law vests these decisions in the sound discretion of the trial judge. *See* Fed. R. Civ. P. 49; *McNally v. Nationwide Ins. Co.*, 815 F.2d 254, 266 (3d Cir. 1987) (holding district judge was not obliged under Rule 49 to "spell out the proximate causation issue" in special interrogatories); *Sprinkle v. AMZ Mtg. Corp.*, 567 F. App'x 163, 164-65 (3d Cir. 2014) (holding that lack of itemized damages on special verdict form was not confusing and misleading); *see also Armstrong v. Dwyer*, 155 F.3d 211, 216 (3d Cir. 1998) ("[T]he formation of jury instructions is entrusted to the discretion of the trial judge . . . . [T]he only limitation on this discretion is that the questions asked of the jury be adequate to determine the factual issues essential to the judgment.") (internal alterations and citation omitted). In the Court's view, the combination of the detailed jury instructions and the straightforward verdict form did not leave the jury confused.[3]

3. U.S. Bank will be awarded restitution damages totaling $1,923,068 (the total amount of premiums paid to Sun Life on the Sol Policy), plus prejudgment interest (to be determined based on additional input from the parties).

U.S. Bank argues that it should be awarded expectation damages – that is, the full $10 million death benefit – it was promised it would receive for owning the Sol Policy. (D.I. 282 at 10-16; *see also id.* at 2 ("U.S. Bank is entitled to its expectancy interest – enforcement of the promises that Sun Life repeatedly made – to pay $10 million.")) Sun Life responds that U.S.

---

[3] Additionally, there is specific evidence that the jury was not confused. When the jury sent out a question with two competing interpretations of the promissory estoppel elements on which it had been instructed, the Court – without objection from Sun Life – answered its question by directly referencing each element as set out in the jury instructions. (*See* D.I. 273 at 6-9; Tr. at 1199-1209; *see also generally Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow [the court's] instructions. Similarly, a jury is presumed to understand a judge's answer to its question.") (internal citation omitted))

Bank should not recover anything on its promissory estoppel claim, as the Court should leave the parties where it found them, since damages cannot be awarded on an illegal, void *ab initio* contract. (D.I. 291 at 3-4) Both parties also propose alternative damages figures should their principal positions be rejected. (*See, e.g.*, D.I. 282 at 16-20 (U.S. Bank arguing for at least reliance damages or restitution); D.I. 291 at 4-10 (Sun Life arguing for at most a small fraction of reliance damages))

"While Delaware courts have recognized some instances when expectation damages may be appropriate in the promissory estoppel context, this is clearly the exception rather than the rule." *Olson v. Halvorsen*, 2009 WL 1317148, at *12 (Del. Ch. May 13, 2009), *aff'd*, 986 A.2d 1150 (Del. 2009). "[T]he more routine role of promissory estoppel should be to assure that those who are reasonably induced to take injurious action in reliance upon non-contractual promises received recompense for that harm." *Ramone v. Lang*, 2006 WL 905347, at *14-15 (Del. Ch. Apr. 3, 2006) (declining to award expectation damages where plaintiff had failed to demonstrate bad faith by defendant). It is the Court's role, sitting in equity, to use its discretion to fashion an appropriate and case-specific award – a principle all parties here acknowledge. (*See, e.g.*, D.I. 274 at 59, 81) "The doctrine [of promissory estoppel], at bottom, embodies the fundamental idea of the prevention of injustice." *Chrysler*, 144 A.2d at 133.

In this case, the equities do not warrant awarding U.S. Bank expectation damages. Such an award "has generally been accompanied by a showing of . . . bad faith" by the promisor. *Olson*, 2009 WL 1317148, at *12; *see also Harmon v. State*, 2010 WL 8250827, at *2 (Del. Super. Ct. Dec. 21, 2010) ("Expectation damages in promissory estoppel suits are only permitted in very unusual circumstances."). In the Court's view, U.S. Bank has not shown bad faith (or

any other "unusual circumstances") by Sun Life to justify expectation damages here.[4] To the contrary, in the Court's view, both sides are to blame for the situation in which they find themselves.[5] To award expectation damages in the circumstances here would encourage lender participants in the STOLI market to continue to generate and trade these types of illegal (under Delaware law) contracts, in contravention of *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059 (Del. 2011) (*"Price Dawe"*).

In exercising its discretion, the Court has considered U.S. Bank's additional arguments, including that "[e]xpectancy relief is also more appropriate where [as here] the promise was made in furtherance of economic activity, as opposed to a gratuitous promise" (D.I. 282 at 14), and that "the jury implicitly endorsed this [expectancy] measure of damages" by finding for U.S. Bank on its promissory estoppel claim (*id.* at 15). These factors do not merit sufficient weight under the circumstances of this case to warrant requiring Sun Life to pay U.S. Bank $10 million. The parties cite many cases arising in a commercial context in which expectation damages are *not* granted (*see, e.g.*, D.I. 291 at 11 n.12 (citing cases)), and the jury here was expressly instructed: "[it] is not your job to decide whether the premiums paid to Sun Life on the Policy

---

[4] This may also have been the jury's view, as it returned a verdict for Sun Life and against U.S. Bank on U.S. Bank's Massachusetts statutory claim. (*See* D.I. 291 at 12-13; *but see* D.I. 294 at 4-6)

[5] *See generally* D.I. 191 at 7 n.5 ("[A]n insurance company (such as [Sun Life]) has a financial incentive to sell policies and to collect (often large) premiums on such policies for as long as possible, even after it may have strong reason to believe that a particular policy was a STOLI and void at its inception, as the insurance company may hope it can retain all the premiums it collects and face little or no risk of ever having to pay a claim on the allegedly unlawful policy. Meanwhile, the agents, lenders, and purchasers on the other side of these transactions (such as [U.S. Bank]) have a financial interest to fund and place as many of these policies as they can (and for amounts as large as possible), to collect (often large) fees and interest, and – if they later come to own the policies themselves – to wager that the likelihood of collecting the large policy proceeds more than offsets the amount it will pay in premiums and the risk of a judicial finding that the policies are unenforceable.").

7

should be returned, in whole or in part. That is an issue for the Court to decide after this trial" (D.I. 267 at 17).

FCI does not come to Court with untarnished hands either. FCI is not an ignorant or duped party, but a highly-sophisticated secondary market investor with nearly $9 billion in life insurance portfolio investments. (Sullivan Tr. at 379-80, 395-96, 488-89) It knew the Sol Policy was premium financed, that Coventry was involved in the policy origination, and that the policy portfolio it was acquiring was higher risk due to "overzealous origination methods" that were subject to legal challenges. (DX-189 at 8632; Sullivan Tr. at 391-94, 414, 500) FCI's due diligence into the Sol Policy also raised several red flags. (*Id.* at 403, 407-09, 414-15, 494) Although FCI's Sullivan testified those concerns were assuaged by a quick internet search (the results of which were not offered into evidence) and knowledge that the Policy was "incontestable" (despite *Price Dawe*'s issuance three years prior) (*id.*), the Court places little weight on this testimony (for reasons including those noted in the preceding parentheticals). The Court is convinced that FCI knew or should have known at the time it purchased the Sol Policy there was a substantial risk the Policy was an illegal STOLI policy. It would be inequitable to award FCI its full reliance damages. (*See generally* D.I. 282 at 16-17 (arguing, in the alternative, that if expectation damages are not awarded, then U.S. Bank should be awarded at least $2,741,013 in reliance damages, i.e., FCI's $1,863,557 purchase price with interest plus $877,456 FCI paid in premiums with interest))

But neither do the equities warrant leaving the parties where the Court found them. Sun Life's hands, like U.S. Bank's and FCI's, are not spotless. Sun Life may have been unaware at origination that some of its policies constituted illegal human life wagers, but Sun Life admits (as the facts compel it to) that it subsequently developed a list of suspected STOLI policies. (D.I.

191 at 7; Foley Tr. at 596-98, 782) With the release of *Price Dawe*, Sun Life also knew (or should have known) that it could invalidate STOLI policies even after the two-year incontestability period. Yet, rather than notify policyholders that their policies were suspected STOLI, or that the validity of their policies may be challenged at any time, Sun Life "made the strategic decision not to pursue investigating [these] policies" (*id.* at 785), and continued to collect (often enormous) premiums (*id.* at 599, 782; Wilkosky Tr. at 552). Sun Life knowingly assumed the risk that someday a court would order it to repay some or all of the millions of dollars it collected in such premiums. If the Court were, instead, to leave the parties as it found them, Sun Life would be unjustly enriched.

The only equitable remedy justified here is restitution damages, in which all premiums paid to Sun Life on the Sol Policy – an undisputed total of $1,923,068 (D.I. 282-1 Ex. C; D.I. 291-1, Annex A) – are returned to U.S. Bank and/or FCI.[6] *See Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Tr.*, 774 F. Supp. 2d 674, 682-83 (D. Del. 2011) (ordering insurer of void *ab initio* life insurance policy to return premiums); *see also Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 565 (D. Del. 2010) (dismissing insurer's claim to retain premiums in action seeking to void policy); *Sun Life Assur. Co. of Canada v. Berck*, 719 F. Supp. 2d 410, 418-19 (D. Del. 2010) (same). Also, U.S. Bank will be awarded prejudgment interest.

In the Court's view, no party here has shown itself to be an innocent victim, and none should leave the Court an undisputed victor.

---

[6] While Sun Life argues that FCI is due only those premiums it directly paid ($702,168), it is undisputed that FCI purchased all interest in the Policy, including the right to pursue the return of any premiums that had already been paid on the Policy. (Sullivan Decl., D.I. 205-1 Ex. 6 at 2)

9

4. In order to assist the Court in calculating the amount of pre-judgment interest to be awarded, **IT IS FURTHER ORDERED** that the parties shall meet and confer and, no later than January 7, 2020, submit a joint status report advising the Court of their position(s) as to the appropriate amount of such interest and (in light of today's ruling) the total judgment to be entered. The parties shall concurrently submit any proposed order(s) they wish the Court to enter.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE